# IN THE COURT OF APPEALS OF IOWA

No. 21-1160
Filed April 26, 2023

**ONTERIER DIRAN BROWN,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

 Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.

 The applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

 Thomas Hurd of Law Office of Thomas Hurd PLC, Des Moines, for

appellant.

 Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney

General, for appellee State.

 Considered by Bower, C.J., Tabor, J., and Potterfield, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**POTTERFIELD, Senior Judge.**

Onterier Brown appeals the denial of his application for postconviction relief (PCR). At the criminal trial, Brown's counsel objected to statements made by the prosecutor during closing argument, arguing the prosecutor was improperly shifting the burden to Brown. The district court overruled the objections. Brown's appellate counsel did not challenge the district court's ruling on direct appeal. In his PCR application, Brown claimed appellate counsel provided ineffective assistance by not raising the issue of alleged improper burden shifting. The PCR court denied Brown's claim, finding he failed to prove either breach of duty or prejudice. Brown re-raises the same issue here on appeal.

**I. Background Facts and Proceedings.**

Brown was charged with one count of sexual abuse in the second degree, two counts of sexual abuse in the third degree, and one count of incest.

At his criminal trial, Brown's daughter testified Brown repeatedly had sexual intercourse with her against her will[1]—more than fifteen or twenty times— beginning when she was sixteen and over a period of about two years. She testified as to a few specific instances, including one time when Brown came into her room in the middle of the night while she was sleeping; she initially resisted getting up and going with him, and Brown left before returning with a butcher knife and pointing it at her. The daughter then complied. The daughter also testified about another time when Brown came to her room while she was watching a movie; he told her to "get up" and then "tried to do sexual intercourse from behind,

---

[1] The daughter testified she told Brown that she didn't want to and "no."

but then [her] brother walked in and [Brown] told [her] brother to get out." The daughter eventually birthed Brown's child.

Brown testified in his own defense. He admitted having sexual intercourse with his daughter more than fifteen or twenty times but claimed she consented. He maintained this position while also, upon further questioning on cross-examination, agreeing the daughter did not affirmatively agree to have sex with him, never said "okay," and never initiated it. When asked how she consented, he testified she consented by "coming along." Then the following took place on cross-examination of Brown:

> Q. Okay. So when you told her to come, she came? A. I never told her. I just tapped her on the shoulder.
> Q. What did that mean when you tapped her on the shoulder? A. To come have sex with me.
> Q. Okay. You've hit her with a belt before? A. Yes, sir.
> Q. And that was after she disobeyed your directions; right? A. That's correct, sir.
> Q. The first time that the two of you had sex, did you tell her at that point that you wanted to have sex? A. No, sir.
> Q. Did you take the clothes off of her? A. No, sir.
> Q. Did she take the clothes off herself? A. Yes, she did, sir.
> Q. Why did she do it? A. Because she knew that's what I wanted.
> Q. How did she know that? A. Like I said, my daughter and I, we had a—a very close relationship and she used to talk to me about everything. And—
> Q. How did she know that you wanted to have sex with her? A. Because we talked about it before.
> Q. Because you had mentioned before that you wanted to have sex with her? A. I mentioned it, yes, sir.
> Q. And so when the first time actually came around, how did you indicate that it was time to have sex? A. Tapped her on the shoulder, sir.
> Q. That was it? A. Yes, sir.
> Q. Did you start taking your clothes off at that point? A. No, I didn't.
> Q. She did? A. Yes.
> Q. With no prompting from you? A. No prompting.

Q. All you did was tap her on the shoulder? A. Tapped her on the shoulder and she came out of the room.

Q. Laid down on the cushions? A. Yes, sir.

Q. With the blanket? A. Yes, sir.

Q. Took her clothes off? A. Yes, sir.

Q. All from just a tap on the shoulder from her father? A. All because we talked about it prior, beforehand. And her and I—we will—we was what her mom—I blame her mom for nothing, but her mom considered her as sneaky around the house. And like I said, [the daughter] and I, we talked about everything when she was—her mother didn't even know that she was dating and going out with boys, but only I knew. And we came—[the daughter] didn't come to no agreement. I came to an agreement that was my way of getting what I wanted by tapping her on the shoulder and she knew what it was all about after that.

Q. So you told her ahead of time, "I'm going to come tap you on the shoulder, and that means we're going to have sex"? A. I said when you're ready, that's what I would do.

Q. Okay. Did she tell you she was ready? A. No, she didn't.

Q. So you had no indication that she was ready? A. No. At that time, the first time, no, sir.

Q. But you did it anyway? A. Yes, sir.

During closing argument, trial counsel questioned the State's evidence, stating:

You only have the testimony of [the daughter] saying that [Brown used a knife to threaten her one time]. That's the only evidence you have. Where is the knife? Where is the knife? Where is this knife? Why didn't they bring it so that she could say, "Oh, yeah, that's the one"? That would have been easy to do. Not a hard task to do.

Where is the son who came in and interrupted one of these events that she described? They didn't have sex because the brother walked in in the living room this time—in the bedroom. That was the only time in the bedroom, my recollection. Only time in the bedroom, the brother walked in. Brother was old enough to know. He didn't testify. He didn't testify that that happened.

There's things missing from this—from the State's case that you can consider, and there's an instruction that tells you that.

During the State's rebuttal, the prosecutor said:

Now, speaking of the knife, as I said, we bear the burden of proof in this case. We have to prove the defendant's guilt. We do not have a burden to bring in every single bit of evidence that there is out there. The defendant is entitled to review the evidence that we have. The defendant is given subpoena power to bring in witnesses

that he thinks would be beneficial to him.  It's not his burden to do so, but it's not just me that can bring evidence in.  He can do it too.  If it's actually going to be beneficial to him, then maybe he should.

> DEFENSE COUNSEL: May we approach, Your Honor?
>
> THE COURT: Sure.
>
> (A sidebar was held.)[2]
>
> PROSECTUOR: Again, I'd like to emphasize the defendant doesn't have any burden to do that, but it's not really fair for him to stand up here and say, "What about this piece of evidence and what about that piece of evidence?  Why didn't the prosecutor bring those things in," with the implication that the reason I didn't bring them in is because it would have been bad.  That's just not a fair argument, ladies and gentlemen.
>
> DEFENSE COUNSEL: Objection, shifting the burden, Your Honor.
>
> THE COURT: Overruled.

On the charge for second-degree sexual abuse, the jury found Brown guilty of the lesser-included offense of sexual abuse in the third degree.[3]  The jury found Brown guilty as charged of two additional counts of third-degree sexual abuse and one count of incest.  Brown was later sentenced to a period of incarceration not to exceed thirty-five years.

Brown challenged his convictions on direct appeal, raising issues with an evidentiary ruling made by the district court and the court's decision to allow the State to present evidence Brown had sexual intercourse with his daughter on more occasions than the charged offenses.  Brown also argued there was not substantial evidence the sex acts were "by force or against the will" of his daughter.  A panel

---

[2] After the jury left the courtroom to deliberate, the court made further record about defense counsel's "object[ion] to burden shifting . . . at two points during the State's rebuttal."  As the PCR court did, we presume the first objection took place during this sidebar after defense counsel asked to approach.

[3] To convict Brown of second-degree sexual abuse, the jury needed to find that "[d]uring the commission of sexual abuse, [Brown] displayed in a threatening manner a dangerous weapon," while sexual abuse in the third degree does not contain this element.

of this court affirmed. *See State v. Brown*, No. 17-2045, 2018 WL 5291336, at *2 (Iowa Ct. App. Oct. 24, 2018).

Brown initiated a timely PCR action and, after several amendments to his application, brought one claim that "appellate counsel was ineffective for failing to argue that the trial court erred in overruling [trial] counsel's objection to prosecutor burden shifting in rebuttal closing arguments."

At the evidentiary hearing, Brown's appellate counsel testified she reviewed the entire trial transcript and noted trial counsel's unsuccessful objection to burden shifting. Appellate counsel decided not to raise the issue on appeal because she did not believe it would be successful; she noted the prosecutor's repeated statements that the State had the burden of proof and that the defendant had the ability (but not the burden) to bring in other witnesses and evidence if he chose. Instead, she focused the appeal on what she believed were stronger issues.

In a written ruling, the PCR court denied Brown's application. The court held:

> Given the context of the prosecutor's comments and the abuse of discretion standard [the appellate court would have used], it was not likely that appellate counsel could have proved the trial court was in error when it overruled [trial counsel's] objection. Furthermore, there is a strong presumption that counsel was competent. The appellate attorney did not perform below professional standards by not appealing the trial court's ruling on the objection as it had a low probability of prevailing.

(Internal citation omitted.) Relying on trial counsel's deposition testimony, stating defense strategy was to avoid a guilty verdict on the second-degree sexual-abuse charge, which was successful, the PCR court also found Brown failed to establish prejudice. Brown appeals.

**II. Standard of Review.**

We generally review PCR actions for correction of errors at law. *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018). But we review constitutional issues, like the alleged ineffective assistance of appellate counsel, de novo. *Id.*

**III. Discussion.**

Brown alleges he received ineffective assistance from appellate counsel, claiming he was prejudiced by appellate counsel's failure to challenge on direct appeal the district court's overruling of his objection the prosecutor was improperly shifting the burden during the State's rebuttal closing argument. "[A]ll postconviction relief applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011). "We start with the presumption that the attorney performed competently and proceed to an individualized fact-based analysis." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012). "Even if [the applicant] can show his counsel made a professionally unreasonable error, the judgment shall not be set aside unless it can be shown the error had an effect on the judgment." *Id.* "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Id.*

Because counsel does not have a duty to raise an issue that is without merit, *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009), we start by considering whether appellate counsel would have obtained a ruling in Brown's favor if she challenged the district court's ruling on direct appeal. To obtain a new trial for Brown based on the alleged error, appellate counsel would have needed to show

"both misconduct on the part of the prosecutor and prejudice resulted." *See State v. Bishop*, 387 N.W.2d 554, 562 (Iowa 1986) (recognizing improper burden shifting is an issue of prosecutorial misconduct). The reviewing court would have considered whether the district court abused its discretion in overruling Brown's objections. *See State v. Adams*, No. 11-1210, 2013 WL 4502303, at *1 (Iowa Ct. App. Aug. 21, 2013) (providing that review of claims of prosecutorial misconduct "where there is a proper objection is for an abuse of discretion").

Brown focuses on these statements of the prosecutor:

> Now, speaking of the knife, as I said, we bear the burden of proof in this case. We have to prove the defendant's guilt. We do not have a burden to bring in every single bit of evidence that there is out there. The defendant is entitled to review the evidence that we have. The defendant is given subpoena power to bring in witnesses that he thinks would be beneficial to him. It's not his burden to do so, but it's not just me that can bring evidence in. He can do it too. If it's actually going to be beneficial to him, then maybe he should.
>
> . . . .
>
> Again, I'd like to emphasize the defendant doesn't have any burden to do that, but it's not really fair for him to stand up here and say, "What about this piece of evidence and what about that piece of evidence? Why didn't the prosecutor bring those things in," with the implication that the reason I didn't bring them in is because it would have been bad. That's just not a fair argument, ladies and gentlemen.

And he points to *State v. Hanes*, 790 N.W.2d 545, 556–57 (Iowa 2010), in which our supreme court called these statements by the prosecutor improper:

> Now, the—the defense brought up Paul McGonigle. And I mentioned Paul McGonigle in my opening. I also mentioned Willie Brown. You didn't see them; did you? No, we didn't call them. You know who else didn't call them? The defense didn't call them. The defense called witnesses. The defense can call any witness they so desire. If there was anything helpful for the defendant, the defense could have called Paul McGonigle or Willie Brown.
>
> . . . .

> . . . If there was anything the defense really wanted from either one of these individuals that they felt was beneficial or helpful to the defendant, they could have called them.

The *Hanes* court found "it was not proper for the State to attempt to shift the burden to the defense to call the witnesses or to suggest the jury could infer from the defense's failure to call the witnesses that they would not have said anything helpful to the defense." 790 N.W.2d at 557. But because the court reversed on other grounds, it did not decide the defendant's ineffective-assistance claim regarding the prosecutor's statements. *See id.*

Highlighting the defendant's "right to put on evidence," when not suggesting the defendant "had the burden to put on evidence" is allowed. *See Bishop*, 387 N.W.2d at 564.[4] We think the closer issue is the prosecutor's suggestion that if the evidence Brown pointed out was missing was "actually going to be beneficial to him, then maybe he should [bring it in]."

But we cannot say Brown's appellate counsel would have obtained a favorable ruling if she raised the issue on direct appeal. Even after *Hanes*, this court has decided "the 'correct rule' regarding a prosecutor's comment on a defendant's failure to call witnesses as follows: 'A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify.'" *State v. Hill*, No. 12-0860, 2013 WL 2370714, at *5 (Iowa Ct. App. May 30, 2013); *but see id.* at *6 (Potterfield, J., dissenting) (asserting that the rule "the State may not comment on the defendant's failure to testify[] was expanded in *Hanes* to prohibit

---

[4] Because Brown testified in his own defense, this is not a case where the defendant's right not to testify is implicated by the prosecutor's remarks.

a prosecutor's arguments that the defense should have called witnesses"). In *Hill*, this court restricted the dicta statement of the *Hanes* court to the facts of that case—where the State had mentioned the jury would hear from two witnesses and then, when it did not call them and the defendant pointed it out in closing, "shifted the burden" by telling the jury the defendant could have done so. 2013 WL 2370714, at *5.

Plus, we view a prosecutor's comments "in the context they were made, rather than in isolation." *State v. Carey*, No. 12-1423, 2014 WL 955917, at *3 (Iowa Ct. App. Mar. 12, 2014). And here, it was Brown who first implied that the State failed to call the brother because he would contradict the State's case. "We allow a prosecutor some leeway when his remarks 'are provoked and are offered in retaliation to arguments for the accused.'" *Wycoff v. State*, 382 N.W.2d 462, 468 (Iowa 1986) (citation omitted). We cannot say appellate counsel would have obtained a favorable ruling if she raised the burden-shifting issue on appeal. So, she had no duty to do so, and Brown's claim of ineffective assistance fails. We affirm the denial of his PCR application.

**AFFIRMED.**